Christine WELBORN–HOSLER,
Appellant,

v.

Paul Andrew HOSLER, Appellee.

No. A14–93–00508–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Jan. 27, 1994.

Dinal C. Lewis, Houston, for appellant.

Dawn M. Korman, Webster, for appellee.

Before J. CURTISS BROWN, C.J., and MURPHY and ELLIS, JJ.

## OPINION

ELLIS, Justice.

Appellant, Christine Welborn–Hosler, appeals the trial court's judgment modifying the original decree of her divorce from Paul Andrew Hosler, appellee. The trial court reduced appellee's child support obligation, ordered appellee to pay arrearages, and changed appellee's visitation rights to the standard possession for parents living more than 100 miles apart. *See* TEX.FAM.CODE ANN. § 14.033(f) (Vernon Supp.1994). We affirm.

Appellant and appellee were divorced in Galveston County on December 19, 1989. In the Suit Affecting the Parent Child Relationship, appellant was appointed managing conservator of their minor child while appellee was given possessory conservatorship. Subsequently, appellee joined the Armed Forces and though temporarily stationed in California, he maintains his Texas residency. Appellant and the minor child later moved to North Carolina.

In June of 1991, appellant brought a motion in North Carolina to modify the visitation rights of appellee. Appellee requested in a letter that the cause be continued indefinitely pursuant to his rights under the Sol-diers and Sailors Civil Relief Act. Appellee did not appear at the hearing although the court found that he had been given notice. Holding that it had jurisdiction over the parties and the subject matter of the case, the North Carolina court modified the Texas divorce decree without prejudice. The order, entered October 16, 1991 and signed *nunc pro tunc* November 14, 1991, provides that visitation between appellee and his minor child "be at such times and under such conditions as are agreeable to the [appellant]."

On September 26, 1992, appellant filed a motion seeking child support in North Carolina. The hearing was held October 27, 1992 and appellee was represented by counsel who contested North Carolina's jurisdiction over appellee. The North Carolina court held on January 21, 1993 that it did not have personal jurisdiction over appellee for purposes of requiring him to pay child support and that the prior Galveston County order remained in full force and effect.

Meanwhile, in December of 1992 appellee filed a Motion for Enforcement, Order to Appear, and Motion to Modify Suit Affecting Parent Child Relationship in Texas. Appellee sought standard visitation for parents residing over 100 miles apart and a reduction in child support. Appellant was served with citation and a hearing was set for January 20, 1993. On January 19th, appellant filed a special appearance and was represented by counsel at the January 20th hearing. During the hearing, counsel for appellant decided not to urge the special appearance and appellee passed on the Motion for Enforcement. However, appellee proceeded with the Motion to Modify on a default basis.

The trial court held that Texas courts had continuing jurisdiction over the child support and visitation issues in this case. Accordingly, the court modified the original divorce decree to provide for a reduction in child support and for the standard visitation rights for parents living more than 100 miles apart. The court also ordered appellee to pay the arrearages in child support.

On April 8, 1993, the trial court entertained a hearing on appellant's Special Appearance to Challenge Jurisdiction and Alter-

native Motion to Vacate Prior Order and Alternative Motion for New Trial. The trial court held that appellant waived her special appearance at the January 20th hearing and denied both motions.

Appellant asserts eight points of error. First, the court erred in hearing evidence on appellee's motion to modify prior to making a ruling on appellant's special appearance. Second, the trial court erred in not hearing argument from appellant's counsel on the special appearance. Third, the trial court erred in assuming jurisdiction over access to the child, visitation, and child support because the North Carolina court had assumed jurisdiction of those issues. Fourth, the Texas divorce decree was not modified by agreement of the parties on January 20. Fifth, the trial court erred in denying appellant's motion for new trial because the settlement agreement which was reached by counsel was based on mutual mistake. Sixth, the trial court erred in hearing the motion to modify because appellant was not given forty-five days notice of the hearing. Seventh, the trial court erred in rendering a default judgment against appellant because the motion to modify was never set for a hearing and the matter was not properly before the court. Eighth, the trial court erred in granting a default judgment against appellant because if the appearance of counsel was a general appearance, then movant could not have taken a default judgment without notice. Points of error four, five, and eight were not brought to the attention of the trial court and may not be raised for the first time on appeal. Thus, they are waived. *Greater Fort Worth and Tarrant County Community Action Agency v. Mims*, 627 S.W.2d 149, 150–51 (Tex.1982).

■ In her first point of error, appellant complains that the trial court erred in hearing evidence on appellee's motion to modify before ruling on her special appearance. However, the record indicates that there was no special appearance before the court to rule on because appellant had chosen not to urge it, but to take a default instead. During the hearing on appellee's Motion to Enforce and Motion to Modify, the court suggested that the parties try to settle the conflict on their own. The parties took a recess, and when they returned to the courtroom, the following took place:

THE COURT: Are we ready to proceed on the Hosler matter?

COUNSEL FOR APPELLEE: If I could, Your Honor, what we would like to do— what [appellee] would like to do at this time is to pass on our hearing on contempt without waiving any of our rights to renotice her and have her return on that issue.

We are going to go forward with our Motion to Modify. We're not—*I believe if I could speak for you, [counsel for appellant] is not going to continue to urge the special appearance, nor is she going to appear on behalf of her client. So, we are going to take this modification on a default judgment* since Mrs.—

THE COURT: In other words, you want to get the evidence before the Court?

COUNSEL FOR APPELLEE: We want to put the evidence before the Court in order to modify the divorce decree on issues of child support and visitation and telephone communication. So, we are asking the Court to hear that on a *default* basis this morning.

THE COURT: I'm not sure I fully understood what you meant. Let's try it one more time.

COUNSEL FOR APPELLEE: We are going to pass on our Motion for Contempt, but leave the pleadings in place. So that if we need to, reserve her notice of a contempt hearing and have that hearing at a future date.

I have also before the Court today the Motion to Modify the divorce decree. *I am asking that the Court hear evidence on that with Mrs. Welborn being in default. She is not appearing, even though she was duly noticed, received citation to be here for this hearing. So, she has defaulted;* and we would like the Court to hear our evidence so that we can modify the divorce decree to come into compliance with the Family Code on the issues of support and visitation.

THE COURT: Now, I will go ahead and hear your evidence.

(emphasis added).

This entire exchange occurred in the presence of counsel for appellant. If it was not her intention to default on the motion to modify, she could easily have spoken up at that time. Since appellant allowed the motion to proceed on a default basis without a ruling on the special appearance, the special appearance is waived. *See Seeley v. Seeley,* 690 S.W.2d 626, 628 (Tex.App.—Austin 1985, no writ). Appellant's first point of error is overruled.

■ In her second point of error, appellant contends that the trial court erred in not hearing argument on the special appearance. Specifically, appellant asserts that she was discouraged from making any argument by the trial court's repeated suggestions of settlement. The comments complained of are as follows:

"This seems like something that could be worked out between yourself ..."

"It appears to me that this is something that you need to sit down and work out."

"It appears to me that this ought to be something that you ought to work out."

"I just feel like if you will spend a little time talking to each other and try to work something out—if you can't, then we will come right back here sometime later on today or this morning, hopefully, and I will go through the formalities of it but it looks like practicality is better than formality."

"You-all take a few minutes this morning and see if you can make any progress. If you cannot, then I will afford you your day in court."

Appellant argues that these comments gave her the impression that either the court had already decided to overrule the special appearance or that it wanted to accommodate appellee who was in the military and had traveled from California to have the motion to modify heard. Whatever reasons appellant had for choosing to forego the special appearance are irrelevant. The fact of the matter is she *chose* to default as opposed to urging her special appearance. Appellant's alleged fear of an unfavorable ruling on a special appearance is without merit because when a special appearance is overruled, the party may thereafter appear generally without waiving the special appearance. *See* Rule 120a; *Seeley,* 690 S.W.2d at 628. Thus, the trial court did not err because it did not preclude appellant from making argument on the special appearance; it was appellant's choice to take a default. Appellant's second point of error is overruled.

Third, appellant asserts that the trial court erred in assuming jurisdiction over access to the child, visitation, and child support because the North Carolina court had assumed jurisdiction over those issues in an order dated November 18, 1991. First of all, that is an incorrect statement. The North Carolina court did assume jurisdiction over *visitation* in November of 1991, but *declined* to exercise jurisdiction over *support* in an opinion signed January 21, 1993. Second, we must review whether Texas has jurisdiction over either issue.

■ In 1983, Texas adopted the Uniform Child Custody Jurisdiction Act (UCCJA). Tex.Fam.Code Ann. § 11.51 *et seq.* (Vernon 1986). The UCCJA creates a system of concurrent jurisdiction in custody determinations, allowing two states to have subject matter jurisdiction to modify a decree involving the same children. *In Interest of S.A.V.,* 837 S.W.2d 80, 87 (Tex.1992). Because the child in this case lived in North Carolina for more than six months before these proceedings were brought, North Carolina is her new "home state" and has acquired subject matter jurisdiction over the child's status. *See* N.C.Gen.Stat. § 50A-3(a)(1) (West 1994). Texas also has continuing subject matter jurisdiction over the original custody determination made in the 1989 Texas divorce decree. Tex.Fam.Code Ann. § 11.53 (Vernon 1986). Thus, Texas and North Carolina have concurrent jurisdiction over the child's status. *See In Interest of S.A.V.,* 837 S.W.2d at 87.

■ When two states have concurrent jurisdiction over a child's status, we must look to the Parental Kidnapping Prevention Act of 1980 (PKPA), 28 U.S.C.A. § 1738A (West Supp.1990). Congress passed the PKPA to prevent jurisdictional conflicts over child cus-

tody and it takes precedence over any state law. *In Interest of S.A.V.*, 837 S.W.2d at 87–88. Section (d) of the PKPA provides:

> The jurisdiction of a court of a State which has made a child custody determination consistently with the provisions of this section continues as long as the requirement of subsection (c)(1) of this section continues to be met and such State remains the residence of the child or of any contestant.

28 U.S.C.A. § 1738A(d) (West Supp.1990). Subsection (c)(1) of the Act reads:

> A child custody determination made by a court of a State is consistent with the provisions of this section only if—
>
> (1) such court has jurisdiction under the law of such State.

28 U.S.C.A. § 1738A(c)(1) (West Supp.1990).

■ Therefore, Texas, as the State that made the original child custody determination, continues to have jurisdiction over the decree as long as two requirements are met. First, Texas must still have jurisdiction under its state laws, and second, the child or one of the contestants must still be a Texas resident.

The second requirement is easily met because there is no dispute that appellee remains a Texas resident although he is stationed in California by the Armed Forces. We must now look at the Texas Family Code to see if Texas retains jurisdiction over visitation of the child to meet the first requirement of the PKPA.

The pertinent part of TEX.FAM.CODE ANN. § 11.05(g) (Vernon Supp.1994) states:

> Except as provided by this section or Subsection (d) of Section 11.53 of this code, a court may exercise its continuing, exclusive jurisdiction to modify all aspects of its decree, including managing conservatorship, possessory conservatorship, possession of and access to the child and support of the child.

Therefore, under the Texas Family Code, Texas retains continuing jurisdiction over all aspects of its decree unless specifically prohibited by § 11.53(d) which states:

> Except on written agreement of all the parties, a court may not exercise its continuing jurisdiction to modify *custody* if the child and the party with custody have established another home state unless the action to modify was filed before the new home state was acquired.

(emphasis added).

The Texas Legislature has determined that when the child has resided in another state for the six months prior to the proceeding, the other state has become the new "home state" and Texas no longer has jurisdiction over "custody." "Custody" is defined in the Family Code as "managing conservatorship of a child." TEX.FAM.CODE ANN. § 11.52(10) (Vernon 1986). "Visitation" is separately defined in the Family Code as "possession of or access to a child." TEX. FAM.CODE ANN. § 11.52(11) (Vernon 1986). It is important that the exception to continuing jurisdiction in the Family Code mentions only "custody" and does not include "visitation." *Hemingway v. Robertson*, 778 S.W.2d 199, 201 (Tex.App.—Houston [1st Dist.] 1989, no writ); *Hutchings v. Biery*, 723 S.W.2d 347, 349 (Tex.App.—San Antonio 1987, no writ) (citing *Heartfield v. Heartfield*, 749 F.2d 1138, 1141–43 (5th Cir.1985)). In other sections where the Legislature intended to provide for both custody *and* visitation, it did so. For example, "custody determination" is defined as "a court decision and court order and instructions providing for the custody of a child, *including visitation rights*, but does not include a decision relating to child support or any other monetary obligation of any person." TEX.FAM.CODE ANN. § 11.52(2) (Vernon 1986) (emphasis added). Thus, had the Legislature intended to include visitation within the exception to Texas' continuing jurisdiction along with custody, it would have either used the term "custody determination" or it would have included the word "visitation." *See Hemingway*, 778 S.W.2d at 210; *Hutchings*, 723 S.W.2d at 349. Therefore, Texas retains power to modify all aspects of its decree except for managing conservatorship. *Henry v. Rivera*, 783 S.W.2d 766, 769 (Tex.App.—San Antonio 1990, no writ). We conclude that the custody exception to Texas' continuing jurisdiction does not apply to visitation or support. *Hemingway*, 778 S.W.2d at 201. Thus, Texas retains jurisdiction over

the visitation and support of the minor child in this case.

■ Appellant argues that under TEX.FAM. CODE ANN. § 11.63 (Vernon 1986) Texas was required to give full faith and credit to North Carolina's order modifying the Texas decree. § 11.63 states in pertinent part:

> The courts of this state shall recognize and enforce an initial or modification decree of a court of another state that had assumed jurisdiction under statutory provisions *substantially in accordance with this subchapter* or that was made under factual circumstances meeting the jurisdictional standards of this subchapter.

(emphasis added).

However, with all due respect to North Carolina, it did not assume jurisdiction in accordance with the UCCJA or the PKPA. The UCCJA states that a state court may modify the decree of another state court only if the other state does not have jurisdiction or has declined jurisdiction. TEX.FAM.CODE ANN. § 11.64 (Vernon 1986). The PKPA states:

> A court of a State may modify a determination of the custody of the same child made by a court of another State, if—
>
> (1) it has jurisdiction to make such a child custody determination; and
>
> (2) the court of the other State no longer has jurisdiction, or it has declined to exercise such jurisdiction to modify such determination.

28 U.S.C.A. § 1738A (West Supp.1990).

Since Texas has continuing jurisdiction under section (d) of the PKPA *supra,* and it has not declined to exercise jurisdiction, North Carolina should not have exercised jurisdiction over the visitation issue in this case and Texas is not required to give full faith and credit to the North Carolina order modifying the Texas decree. Appellant's third point of error is overruled.

■ In appellant's sixth point of error, she asserts that the trial court erred in hearing the motion to modify because she was not given forty-five days notice of the hearing pursuant to TEX.R.CIV.P. 245. At the hearing on appellant's Special Appearance to Challenge Jurisdiction and Alternative Motion to Vacate Prior Order and Alternative Motion for New Trial, appellant's counsel argued that appellant was not given notice of the hearing on the motion to modify. Appellant's counsel stated that she was served with both the motion to enforce and the motion to modify. The motion to enforce had an Order to Appear attached notifying her of the hearing but the motion to modify did not. The trial court read the docket sheet into the record which reflected that the both motions were set for hearing on January 20th. However, appellant contended that there was nothing in the record to show that she had been given notice. The trial court denied the motions.

■ The law presumes that a trial court will hear a case only after proper notice to the parties. Appellant has the burden of rebutting this presumption by affirmatively showing lack of notice. *Hanners v. State Bar of Texas,* 860 S.W.2d 903, 908 (Tex. App.—Dallas 1993, no writ); *Jones v. Texas Dept. of Public Safety,* 803 S.W.2d 760, 761 (Tex.App.—Houston [14th Dist.] 1991, no writ); *Trevino v. Gonzalez,* 749 S.W.2d 221, 223 (Tex.App.—San Antonio 1988, writ denied). This burden is not met by merely claiming in a motion for new trial, unsupported by affidavit or other competent evidence, that there was no proper notice. *Hanners,* 860 S.W.2d at 908; *Jones,* 803 S.W.2d at 761; *Trevino,* 749 S.W.2d at 223. Although appellant's written motions were supported by the affidavits of both appellant and her counsel, she did not allege improper notice in her written motions. Instead, counsel for appellant merely alleged at the oral hearing that appellant did not receive notice, without presenting any affidavits or other competent evidence in support of those allegations. We hold that appellant has not met her burden of affirmatively showing lack of notice, thus, her sixth point of error is overruled.

In her seventh point of error, appellant contends that the trial court erred in rendering a default judgment against her because the motion to modify was never set for a hearing and the matter was not properly before the court. Although the point of error reads that the motion was never "set" for

hearing, in the text of the brief, appellant argues that she was never given notice of the setting; making effectively the same argument that she did in the sixth point of error which we overruled. At any rate, at the hearing on appellant's Special Appearance to Challenge Jurisdiction and Alternative Motion to Vacate Prior Order and Alternative Motion for New Trial, the trial judge read into the record the docket sheet that reflected that the hearing on the motion to modify was set. Absent any affirmative proof to the contrary, we overrule appellant's seventh point of error.

Accordingly, the judgment of the trial court is affirmed.