In the Matter of J.A.S., IV, a Juvenile 
















IN THE
TENTH COURT OF APPEALS
 

No. 10-95-293-CV

IN THE MATTER OF J.A.S., IV, A JUVENILE,

 

From the County Court at Law No. 2
Brazos County, Texas
Trial Court # 42-J-94cc
                                                                                                    

O P I N I O N
                                                                                                    

          A jury found that J.A.S., a juvenile, engaged in the delinquent conduct of retaliation. See
Tex. Penal Code Ann. § 36.06 (Vernon 1994). At the disposition hearing, the court committed
him to the Texas Youth Commission ("TYC"). J.A.S. appeals on seven points. His point one
complains that the evidence is factually insufficient to support the charge of retaliation. Points
two, three, four, and six challenge the court's decision to commit him to TYC, arguing that the
court improperly based the decision on budgetary concerns, failed to consider other forms of
rehabilitation, refused to find that J.A.S. was mentally ill and needed specialized treatment, and
ignored its prior decision which had found J.A.S. mentally ill. Point five contends that because
the court knew that J.A.S.'s mental illness was not being properly treated at TYC, the court
abused its discretion in denying his motion for new trial. His final point asserts that the court
improperly based its decision to commit him to TYC on an unadjudicated extraneous offense. We
will affirm.
FACTUAL SUFFICIENCY
          J.A.S.'s first point asserts that the evidence is factually insufficient to support the charge
of retaliation. He argues that because juvenile proceedings are quasi-criminal, we should apply
the Clewis standard to this case. Clewis "harmonized" the criminal and civil standards for factual
sufficiency. Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). Because we have
been applying the civil standard to juvenile cases, we have no reason to believe that Clewis altered
our review in juvenile proceedings. See R.X.F. v. State, 921 S.W.2d 888, 900 (Tex. App.—Waco
1996, no writ). Additionally, the Texas Family Code requires us to follow the standards
governing appeals "in civil cases generally." See Tex. Fam. Code Ann. § 56.01(b) (Vernon
1996); see also In the Matter G.M.P., 909 S.W.2d 198, 202 (Tex. App.—Houston [1st Dist.]
1995), no writ). Thus, when reviewing a factual sufficiency claim, we must examine the evidence
as a whole to ascertain whether the State met its burden of proof beyond a reasonable doubt. 
R.X.F., 921 S.W.2d at 900; In the Matter G.M.P., 909 S.W.2d at 202. If we find that the
adjudication is so contrary to the overwhelming weight of the evidence as to be clearly wrong and
unjust, we will sustain the point and remand the case because the State failed to carry its burden. 
Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986); R.X.F., 921 S.W.2d at 900. Upon finding that
the evidence is factually insufficient, we must clearly explain in the opinion how we determined
that the evidence is factually insufficient thus causing the verdict to be clearly wrong and unjust. 
Pool v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex. 1986); R.X.F., 921 S.W.2d at 900.
          After reviewing the evidence, we find that the verdict is not contrary to the overwhelming
weight of the evidence. The record shows that on February 7, 1994, a fight occurred between
G.J. and J.A.S in front of G.J.'s home. At the time of the incident, J.A.S. was fifteen years old. 
G.J. testified that he and another boy, E.D., were "messing around," play fighting. As E.D. was
leaving, J.A.S. arrived saying that he wanted to see a fight. When G.J. asked him to leave, J.A.S.
refused. He picked up G.J., threw him on the ground, kicked him in the ribs three times, and spat
on him. G.J. reported this incident to the police. 
          On February 15, 1994, G.J. met E.D. and another boy, J.S., at E.D.'s locker when J.A.S.
and B.E. approached G.J. J.A.S. threatened to "rip [G.J.'s] head off like Michael Meyers did in
Halloween, IV" if G.J. pressed charges against him. G.J. testified that although he did not believe
that J.A.S.'s would "rip off his head," he was afraid that J.A.S. would injure or hurt him. Later
that day, J.A.S. walked up to G.J. at the bike rack threatening that "if [G.J.] did press charges,
the charges wouldn't be assault. They would be murder." E.D. also testified that he heard J.A.S.
threaten to murder G.J. if he were convicted of assault and to "rip his head off" if he pressed
charges. G.J. also testified that on February 14, while he was standing in the lunch line, J.A.S.
had threatened to "rip his head off" if he pressed charges.
          Becky Hix testified that she was working the lunch line on February 14 when she observed
J.A.S. talking to G.J. She stated that G.J. looked uncomfortable and troubled like he wanted to
be left alone. She also testified that J.A.S. "had a threatening air about him," and she heard
J.A.S. threaten to "beat up" G.J. if G.J. did not drop the charges. 
          Another witness B.E. testified that he was at the bike rack when he heard J.A.S. threaten
to "rip off G.J.'s head like Mike Meyers".
          Our review of the evidence shows that several witness testified that J.A.S. threatened to
injure G.J. if G.J. pressed charges against him. Because there is strong evidence to support the
verdict, we find that the adjudication is not so contrary to the overwhelming weight of the
evidence that is manifestly wrong and unjust. Point one is overruled. 
ABUSE OF DISCRETION
          J.A.S.'s points two, three, four, and six challenge the judge's decision to commit him to
TYC. Because the trial court has "broad powers and discretion in determining suitable disposition
of children who have engaged in delinquent conduct," we will review the court's decision on an
abuse of discretion standard. T.R.S. v. State, 663 S.W.2d 920, 923 (Tex. App.—Fort Worth
1984, no writ); see also Matter of J.R., 907 S.W.2d 107, 110 (Tex. App.—Austin 1995, no writ);
J.R.W. v. State, 879 S.W.2d 254, 257 (Tex. App.—Dallas 1994, no writ). We will examine the
entire record to determine whether the court acted "without reference to any guiding rules and
principles" or was unreasonable or arbitrary. Beaumont Bank, N.A. v. Buller, 806 S.W.2d 223,
226 (Tex. 1991); see also Matter of A.F., 895 S.W.2d 481, 483 (Tex. App.—Austin 1995, no
writ); K.L.M. v. State, 881 S.W.2d 80, 84 (Tex. App.—Dallas 1994, no writ). Although we
might have decided the case differently, we will not reverse the trial court's decision if there is
some evidence to support its decision. Id. 
          
          On cross examination, he acknowledged that a reason for recommending TYC was because
it caused less strain on the budget. He admitted that Juvenile Services had not tried every possible
alternative like intensive supervised probation, but based on J.A.S.'s behavior while on informal
adjustment and conditional release, those methods would be ineffective because J.A.S. does not
follow rules. He also testified Juvenile Services had placed children in Desert Hills, but placement
in private placement facilities is difficult with assaultive children. He said that children who are
out of control or assaultive have been removed from private placement facilities like Desert Hills
and sent back to the court to be placed elsewhere because places like Desert Hills could not handle
these types of children. He also testified that another reason why TYC was better than Desert
Hills is because TYC had a better battery of tests and better observation before the evaluations are
made. 
          Dr. Tan, who treated J.A.S. while he was placed in Austin State Hospital for evaluation,
testified that it would not be in J.A.S.'s best interest or society's to place J.A.S. on probation. 
Because of his continued aggression, the best place for J.A.S. was in TYC so that he would be
prevented from hurting his parents and other people. Dr. Tan also testified that he believed that
J.A.S. did not require psychiatric hospitalization, although he did admit that TYC has the
necessary resources for determining the appropriate treatment for J.A.S. He further stated that
J.A.S. exhibited no remorse for his past aggressive behavior and that he was a violent, aggressive
person. In fact, J.A.S. told Dr. Tan that he had hurt a teacher at school, his mother, and several
students at school and that he was capable of hurting people without remorse. Thus, Dr. Tan
concluded that J.A.S. was a "potential murderer" and, in his report, stated that he would not be
surprised to see J.A.S. in the criminal justice system.
          Linda Ricketson, a probation officer for Brazos County Juvenile Services testified that
TYC could provide the services that J.A.S. needs and it could supply the same services as Juvenile
Services with no cost to the county. 
          David Gordon Munson, an assistant principal at J.A.S.'s school, testified that J.A.S. is an
instigator and is confrontational. Munson stated that J.A.S. manipulates the system by having an
"outburst" whenever he does not want to do something like take a test. He testified that J.A.S.
had told him that it is his "mission" to prove that he is a "menace to society." He also related an
incident where he had taken J.A.S. home to his mother and J.A.S. had become very violent. 
When J.A.S. displayed a knife, Munson was forced to remain with J.A.S.'s mother because he
feared for her safety. Munson further observed that J.A.S. never felt remorseful or sorry for his
actions and that he only regretted getting caught. 
          After the conclusion of the evidence, the court pronounced its decision stating, "if you
don't change your ways, the public is going to be seriously harmed; and that is the reason I'm
going to commit you to the Texas Youth Council. We do not have the resources in the county
budget to place him at Desert Hills, I don't know that that's the appropriate place for him." It
further determined that the schools, juvenile services, and mental health services had done all they
could to help J.A.S. Thus, she concluded that he should be committed to TYC. 
          Having reviewed the evidence, we find that some evidence supports the court's 54.04
determinations as stated in its disposition order. As to whether it was in J.A.S.'s best interest to
be placed outside his home, both his probation officer, McDaniel, and Dr. Tan testified that it was
in the best interest of J.A.S. to be placed in TYC because he was very violent and needed to learn
the consequences of his actions. Reasonable efforts had been made to avoid removal from the
home. McDaniel testified that Juvenile Services had tried other alternatives like electronic
monitoring and informal probation, but because J.A.S. could not follow rules, Juvenile Services
had "exhausted" its resources. Dr. Tan also testified that probation was not appropriate for J.A.S. 
          Additionally, the evidence demonstrated that J.A.S. would not receive the necessary level
of care and supervision to fulfil the conditions of probation. Here, the evidence clearly shows that
J.A.S.'s parents were unable to maintain discipline, and several witnesses testified that the parents
could not provide the necessary supervision. In fact, J.A.S.'s own doctor testified that he had
serious questions about the parents' ability to adequately supervise J.A.S. 
          Finally, J.A.S. argues in his brief that he should be placed in Desert Hills because it would
meet his mental health needs. We disagree. There is some evidence to support the court's
determination that TYC was better than Desert Hills. Not only did McDaniel testify that TYC has
the power to place J.A.S. in other mental health facilities, including Desert Hills, but he also
testified that TYC has a better battery of tests that would be able to diagnose J.A.S.'s mental
problems. Furthermore, the statute requires only that the court determine whether the child should
be placed outside the home, not whether TYC or some other facility is more appropriate. Thus,
we hold that the court did not abuse its discretion when it committed J.A.S. to TYC. Point two
is overruled. 
          J.A.S.'s point three contends that the court abused its discretion in committing him to TYC
without attempting to use other forms of rehabilitation and trying to keep J.A.S. at home. The
record demonstrates that informal probation and electronic monitoring had been attempted, but
they failed. McDaniel testified that Juvenile Services had "exhausted" its resources; thus, J.A.S.
should be sent to TYC. Additionally, Dr. Tan, McDaniel, and Dr. Newsom testified that J.A.S.
should not be kept at home because he did not have adequate supervision. Thus, we find that the
court did not abuse its discretion in committing J.A.S. to TYC because the evidence supports the
determination that TYC was the best place for J.A.S. We overrule point three.
          In point four, J.A.S. alleges that the court erred in committing him to TYC because the
evidence shows that he is mentally ill and needs special treatment. Again, we disagree. Dr. Tan
testified that J.A.S. did not need psychiatric treatment. Even Dr. Newsom was not willing to give
a definite diagnosis of J.A.S.'s condition, because as an adolescent, J.A.S.'s personality was still
developing. Thus, the evidence does not clearly demonstrate that J.A.S. was mentally ill. 
Assuming J.A.S. has a mental disorder, the record shows that TYC has the resources necessary
to treat him. In fact, TYC could send J.A.S. to other facilities if a mental illness were found. The
record shows that Desert Hills may not be the appropriate place for an assaultive child like J.A.S. 
Consequently, the court did not abuse its discretion in committing J.A.S. to TYC. Point four is
overruled. 
          Point six asserts that the court abused its discretion when it ignored its prior decision
finding J.A.S. mentally ill. The record shows that J.A.S. was only committed to Austin State
Hospital for 90 days so that he could be evaluated and diagnosed. Dr. Tan, the treating
psychiatrist at Austin State Hospital, found that J.A.S. did not need psychiatric treatment. J.A.S.
argues that Dr. Newsom found him mentally ill, but the record shows that Dr. Newsom was
unwilling to give a definite diagnosis because J.A.S. was an adolescent whose personality was still
forming. He even said that Dr. Tan's diagnosis should be given credit because Dr. Tan had spent
more time with J.A.S. than he had. Additionally, the testimony showed that TYC has the
capability to deal with J.A.S.'s mental disorder if one were found. We find that the court did not
abuse its discretion committing J.A.S. to TYC. Point six is overruled. 
          Point five contends that the trial court abused its discretion in denying J.A.S.'s motion for
new trial. J.A.S. asserts that because the court knew that he was not receiving the medication
prescribed for his bipolar disorder while he was in TYC's custody, it abused its discretion in not
granting a new trial. J.A.S.'s motion for new trial asserts only that J.A.S. should not have been
committed to TYC because the evidence at trial showed that he was mentally ill and needed
specialized treatment. The motion does not allege that TYC was not administering J.A.S.'s
medication, and the motion does not contain any affidavits asserting that TYC was not providing
adequate care. The court was informed of these allegations only through a letter sent by J.A.S.'s
attorney. 
          J.A.S., as the movant, had the burden of presenting a motion for new trial to the court,
"obtaining a hearing, and presenting evidence to substantiate any factual matters necessary to show
he is entitled to the requested relief." Cocke v. Saks, 776 S.W.2d 788, 790 (Tex. App.—Corpus
Christi 1989, writ denied); see also Fulton v. Duhaime, 525 S.W.2d 62, 64 (Tex. Civ.
App.—Houston [1st Dist.] 1975, writ ref'd n.r.e.). When a movant requests a new trial based on
facts outside the knowledge of the court, the factual allegations should be supported by affidavits
or other competent evidence. Smith v. Mike Carlson Motor Co., 918 S.W.2d 669, 672 (Tex.
App.—Fort Worth 1996, no writ); see also Welborn-Hosler v. Hosler, 870 S.W.2d 323, 328 (Tex.
App.—Houston [14 Dist.] 1994, no writ) (holding that the movant's burden is not met if the
motion for new trial is not supported by affidavits or competent evidence). A trial court's denial
of a motion for new trial will not be disturbed absent an abuse of discretion. Old Republic Ins.
Co. v. Scott, 873 S.W.2d 381, 382 (Tex. 1994); Cliff v. Huggins, 724 S.W.2d 778, 778 (Tex.
1987). 
          The evidence adduced at trial does not clearly show that J.A.S. was mentally ill. Dr. Tan
testified that J.A.S. did not need psychiatric treatment. Further, the record does not support
J.A.S.'s allegations concerning his medication. J.A.S. did not assert in his motion that TYC was
not giving him the medicine for bipolar disorder, and he did not present any competent evidence
or affidavits supporting this allegation. Thus, the court did not abuse its discretion when it denied
J.A.S.'s motion for new trial. We overrule point five.
          In point seven, J.A.S. argues that the trial court improperly considered an unadjudicated
offense in committing him to TYC. He argues that when the trial judge said "[J.A.S.], of course,
the allegations against you in the [C.O. case] . . . are very serious allegations, but they have not
been proven to be true," it was basing its decision on an unadjudicated offense. This was
demonstrated when the court further said, "I don't know what is happening with you and I don't
know why you seem to be spiralling, but it's looking to me like it's a spiral and we've got to do
something to stop it before it just gets deeper and worse." The evidence adduced at the disposition
phase shows that J.A.S. had nine major "incidents" while on informal adjustment. He violated
his conditional release while waiting for trial in this case. Both Dr. Tan and McDaniel testified
that J.A.S. should be sent to TYC. The court's statement does not clearly indicate that it based
its decision to send J.A.S. to TYC only on an adjudicated offense. Furthermore, the evidence
otherwise supports the decision. Consequently, the court did not err in committing J.A.S. to
TYC. We overrule point seven.  
CONCLUSION
          Having overruled J.A.S.'s points, we affirm the judgment. 



                                                                                 BILL VANCE
                                                                                 Justice

Before Chief Justice Davis,
          Justice Cummings, and
          Justice Vance
Affirmed
Opinion delivered and filed January 29, 1997
Do not publish