**Affirmed and Majority and Concurring Opinions filed December 13, 2016.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-15-00673-CV

---

### WINSTON LEON HENDRICKS, Appellant

### V.

### SHARON KAYE (BERWICK) BARKER, INDIVIDUALLY AND AS THE INDEPENDENT EXECUTRIX OF THE ESTATE OF JAMES LUTHER BERWICK, Appellee

---

**On Appeal from the 127th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2014-32718**

---

## MAJORITY OPINION

In this appeal from an order dismissing a case for want of prosecution, the main issues are (1) whether the dismissal order should be set aside because the plaintiff lacked notice of the trial setting, and (2) whether the trial court abused its discretion by disqualifying the plaintiff's attorney. Finding no error, we overrule each issue and affirm the trial court's order.

# BACKGROUND

Winston Hendricks, the plaintiff below, entered into a contract with Sharon Barker to purchase certain real property from the estate of Barker's deceased father. The contract was a so-called "contract for deed," in which the parties agreed that legal title would pass to Hendricks only when he made all of his required payments. In the event of a default, Barker had the right to terminate the contract and retain any payments as deemed rental charges.

A dispute arose sometime after the contract was executed. Hendricks alleged that he contacted Barker to inquire about the balance remaining on the contract. He claimed that he wanted to pay off the balance in full so that he could obtain legal title to the property. Barker, however, allegedly engaged in dilatory tactics, refused to credit Hendricks for all of the payments he had made, and at one point instructed Hendricks to vacate the property. When informal attempts to resolve the parties' disputes had failed, Hendricks filed suit against Barker, asserting multiple causes of action.

Shortly after filing her answer, Barker moved to disqualify Hendricks's attorney, Terry Proctor. In her motion, Barker alleged that she had approached Proctor nearly three years before the filing of the lawsuit to seek assistance in the preparation of Hendricks's deed. Barker further alleged that she gave confidential information to Proctor, that Proctor gave her legal advice in return, and that she believed Proctor was her personal attorney.

After a hearing, the trial court granted Barker's motion to disqualify. The disqualification order directed Proctor and his law firm to refrain from advising, aiding, or assisting Hendricks in the lawsuit. The record does not reveal that Hendricks ever obtained new counsel.

The trial court scheduled the trial setting for nearly ten months after the disqualification order. Seventeen days before that trial setting, the trial court sent a letter to Proctor, requesting that Proctor forward notice of the trial setting to Hendricks's last known address. The trial court explained that it was asking Proctor to forward the notice to Hendricks because Hendricks did not leave an address on file.

On the same day that it mailed the letter to Proctor, the trial court also mailed notice of the trial setting to what it apparently believed was Hendricks's last known address. The address on the notice is the same address that Hendricks identified as his personal residence in the contract for deed, which was attached as an exhibit to his original petition. That address also corresponds with the real property that Hendricks sought to purchase from Barker in the contract for deed.

Two days before the trial setting, Hendricks filed a notice of appeal from the trial court's order disqualifying Proctor. Hendricks did not also file a petition for writ of mandamus, complaining of the same issue. Within his notice of appeal, Hendricks asserted that he had not received timely notice of the trial date, and he asked the trial court to terminate his impending trial setting. The record does not reflect that Hendricks made this request in another form, such as a separately filed motion for continuance.

Hendricks's notice of appeal was prepared and signed by Proctor, despite Proctor's disqualification. When the trial date arrived, neither Hendricks nor Proctor made an appearance. That same day, the trial court dismissed the case for want of prosecution. Hendricks did not move for a new trial.

After the case was dismissed, Hendricks filed an amended notice of appeal—again, with the assistance of Proctor—expressing his intent to challenge both the dismissal of the case and the disqualification of his attorney. Within this

3

amended notice, Hendricks also sought mandamus relief in connection with the disqualification issue. The mandamus proceeding was assigned to a different panel of this court. That panel denied relief because the dismissal order was final, which meant that Hendricks could pursue his complaints on direct appeal. *See In re Hendricks*, No. 14-16-00056-CV, 2016 WL 675386, at *1 (Tex. App.—Houston [14th Dist.] Feb. 18, 2016, orig. proceeding) (per curiam) (mem. op.). We now consider those complaints here.

## APPELLATE JURISDICTION

In his third issue, Hendricks argues that he perfected his appeal. Because this issue addresses our appellate jurisdiction, we consider it first.

To invoke this court's jurisdiction, a party must file a written notice of appeal with the trial court clerk. *See* Tex. R. App. P. 25.1. A party complies with this rule by making a bona fide attempt to invoke appellate jurisdiction. *See In re J.M.*, 396 S.W.3d 528, 531 (Tex. 2013) (per curiam) (holding that a combined motion for new trial and notice of appeal invoked appellate jurisdiction).

Hendricks filed his original notice of appeal at a time when there was no final judgment or appealable interlocutory order. *See* Tex. Civ. Prac. & Rem. Code § 51.014 (enumerating the types of interlocutory appeals that may be taken). His notice of appeal was filed prematurely, but it was deemed effective when the trial court finally dismissed the case for want of prosecution. *See* Tex. R. App. P. 27.1(a) ("In a civil case, a prematurely filed notice of appeal is effective and deemed filed on the day of, but after, the event that begins the period for perfecting the appeal."); *cf. Brooks v. Goodyear Tire & Rubber Co.*, No. 14-12-01048-CV, 2013 WL 3477288, at *2 n.2 (Tex. App.—Houston [14th Dist.] July 9, 2013, no pet.) (mem. op.) (holding that a premature notice of appeal from an interlocutory

4

summary judgment was deemed effective when the trial court granted a severance and rendered the summary judgment final).

Hendricks also amended his notice of appeal following the trial court's dismissal order, which broadened the scope of the appeal and removed any doubt about the effectiveness of the original notice of appeal. *See* Tex. R. App. P. 25.1(g) (providing that an amended notice of appeal correcting any defects or omissions in an earlier notice may be filed in the appellate court at any time before the appellant's brief is filed). We conclude that Hendricks perfected his appeal and that we have appellate jurisdiction.

## DISMISSAL ORDER

In his first issue, Hendricks argues that the trial court erred by dismissing his case for want of prosecution. He requests that we set aside the dismissal order because he claims that he never received notice of his trial setting (contrary to the statements in his premature notice of appeal).

Hendricks failed to preserve error on this point because he did not raise it in a motion for new trial. Rule 324 of the Rules of Civil Procedure provides that a point in a motion for new trial is a prerequisite to a complaint on appeal on which evidence must be heard. *See* Tex. R. Civ. P. 324(b)(1). As examples of such complaints, Rule 324 identifies complaints involving "jury misconduct," "newly discovered evidence," and "the failure to set aside a judgment by default." *Id.* Rule 324 does not expressly mention a complaint that an order dismissing a case for want of prosecution should be set aside because the claimant lacked notice of the trial setting. However, that complaint is one on which evidence must be heard: "The operative standard [for setting aside a dismissal order] is essentially the same as that for setting aside a default judgment." *Smith v. Babcock & Wilcox Constr.*

5

*Co.*, 913 S.W.2d 467, 468 (Tex. 1995) (per curiam) (citing *Craddock v. Sunshine Bus Lines*, 133 S.W.2d 124 (Tex. 1939)).

Hendricks makes factual assertions in his brief which underscore the need for an evidentiary hearing. For example, Hendricks asserts that neither he nor Proctor received notice of the trial setting until after the case was dismissed—even though Hendricks (through Proctor) filed a notice of appeal two days before the trial setting requesting a termination of the trial setting. At the very least, the notice of appeal establishes that Proctor knew about the trial setting before the case was dismissed.

Elsewhere in his brief, Hendricks claims that he was living in North Dakota at the time of the trial—even though his petition and the exhibits attached to it represent that he was residing in Texas. These sorts of factual conflicts must be resolved in the trial court before we, the appellate court, can address them. Because Hendricks never called for an evidentiary hearing or presented these issues in a motion for new trial, he has preserved nothing for appellate review. *Cf. Mamou v. Sias*, No. 14-10-01154-CV, 2011 WL 2803437, at *2 (Tex. App.—Houston [14th Dist.] July 19, 2011, no pet.) (mem. op.) (in an appeal from a post-answer default judgment, the defendant's complaint that he did not receive proper notice of the trial setting could not be considered by the appellate court because the defendant did not preserve his complaint in a motion for new trial).

We overrule Hendricks's first issue. *See* Tex. R. Civ. P. 324(b)(1).

## DISQUALIFICATION ORDER

In his second issue, Hendricks challenges the trial court's order disqualifying Proctor. Hendricks contends that the disqualification is erroneous because, among

other reasons, Proctor never violated a disciplinary rule of professional conduct or received any confidential information from Barker.

We review a trial court's ruling on a motion to disqualify for an abuse of discretion. *See Metro. Life Ins. Co. v. Syntek Fin. Corp.*, 881 S.W.2d 319, 321 (Tex. 1994) (per curiam). When reviewing matters committed to the trial court's discretion, we, as an appellate court, may not substitute our judgment for that of the trial court. *See Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding). Instead, we must consider whether the trial court acted in an arbitrary or unreasonable manner, or without reference to any guiding rules or principles. *See Downer Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). If the trial court's ruling is supported by evidence, then the ruling must be upheld. *See Van Ness v. ETMC First Physicians*, 461 S.W.3d 140, 142 (Tex. 2015) (per curiam).

The movant has the burden of proof on a motion to disqualify. *See In re EPIC Holdings, Inc.*, 985 S.W.2d 41, 60 (Tex. 1998) (orig. proceeding). When the movant seeks disqualification based on an alleged violation of a disciplinary rule, the movant must establish the violation with specificity. *Id.* Furthermore, the movant must demonstrate that the opposing lawyer's conduct caused actual prejudice that requires disqualification. *See In re Nitla S.A. de C.V.*, 92 S.W.3d 419, 422 (Tex. 2002) (orig. proceeding) (per curiam).

Barker moved to disqualify Proctor based on several rules pertaining to conflicts of interest, including Rule 1.09 of the Texas Disciplinary Rules of Professional Conduct. Rule 1.09 provides as follows: "Without prior consent, a lawyer who personally has formerly represented a client in a matter shall not thereafter represent another person in a matter adverse to the former client if it is

the same or a substantially related matter." *See* Tex. Disciplinary R. Prof'l Conduct 1.09(a)(3), *reprinted in* Tex. Gov't Code, tit. 2, subtit. G, app. A, art. X, § 9.

Establishing a violation of Rule 1.09 depends on proof of an attorney-client relationship. *Id.* The record in this case does not contain a formal contract or engagement letter between Proctor and Barker, proving that they both agreed to enter into an attorney-client relationship. However, even without such formal proof, an attorney-client relationship can be implied from the conduct of the parties. *See In re Baytown Nissan Inc.*, 451 S.W.3d 140, 146 (Tex. App.—Houston [1st Dist.] 2014, orig. proceeding). A finding of an implied relationship must be based on objective standards of what the parties did and said. *See Tanox, Inc. v. Akin, Gump, Strauss, Hauer & Feld, L.L.P.*, 105 S.W.3d 244, 254 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). One party's subjective belief that such a relationship was formed is not sufficient. *See LeBlanc v. Lange*, 365 S.W.3d 70, 79 (Tex. App.—Houston [1st Dist.] 2011, no pet.). A question of fact exists when the evidence does not conclusively establish the existence of an attorney-client relationship. *See Tanox*, 105 S.W.3d at 254.

To prove the existence of an attorney-client relationship, Barker relied on a letter that she had received from Proctor nearly three years before the litigation began. The letter is just over four pages in length, single-spaced, and it focuses largely on the preparation of Hendricks's deed. Proctor begins the letter by memorializing his comments from a previous conversation with Barker. He advises Barker that, to prepare the deed, she will need to produce certain documentation, including her parents' wills, proof of the chain of title, and letters testamentary.

Proctor then says that there has been recent legislation in Texas addressing contracts for deeds. Proctor advises Barker that, historically speaking, there have been many abuses with contracts for deeds, and that she should consider more

"correct way[s] to sell real property" should she choose to be involved in future real estate transactions.

Proctor then addresses certain issues relating to the balance owed under the contract. Proctor first advises Barker that the total payments required of Hendricks do not compute with the purchase price for the property, which he suggests is problematic. Proctor also states that Hendricks has been making certain tax payments on the property. Proctor opines that Hendricks should receive credits for these payments because the taxes were Barker's personal obligations. He additionally opines that the balance owed from Hendricks is less than what Barker had previously represented, although he clarifies that the exact figure cannot be determined without a complete accounting.

Throughout the letter, Proctor mentions that he has had several contacts with Hendricks, although Proctor does not advise Barker that he has formally engaged Hendricks as his attorney. Towards the end of the letter, Proctor informs Barker that he charges $200 per hour for his services, that he has already billed approximately 1.5 hours, and that he anticipates that all issues can be resolved in about 3 hours of billing unless there are unforeseen delays.

Proctor attached a copy of this letter to Hendricks's petition, and the trial court considered it at the hearing on the motion to disqualify. At that hearing, Proctor claimed that Barker was never his client, but he acknowledged that she had contacted him about preparing a deed and that she once told him that she believed he was her attorney. Proctor said that Hendricks became his client because Barker referred Hendricks to him. Proctor also said that he tried to resolve the disputed balance issues with Barker, but she never presented anything responsive to his requests.

The trial court articulated three concerns: first, that Proctor may have engaged Barker as a client; second, that Proctor may have been acting as a "broker" between Barker and Hendricks; and third, that Proctor may have to be called as a fact witness against Barker. The court explained:

> [W]hat concerns me more than whether or not you engaged this person or she believed she engaged you is the fact that it's unavoidable that . . . what's going to end up happening is Ms. Barker is going to say, "I spoke with Attorney Proctor. I spoke with Attorney Proctor. I spoke with Attorney Proctor. He told me X, Y, Z. He told me X, Y, Z." I don't know how you defend yourself without calling yourself as a witness.

In response, Proctor agreed that "that decision would have to be made," referring to his becoming a witness, but he opposed the disqualification because it would be expensive for Hendricks.

The trial court did not enter findings of fact and conclusions of law in connection with its disqualification order. However, we can infer that the trial court made an implied finding that an attorney-client relationship was created by the parties' conduct. This implied finding is supported by the evidence that (1) Proctor had discussions with Barker concerning the controversy with Hendricks, which Proctor described as "a legal matter" in his letter; (2) Proctor requested documentation from Barker in order to resolve this controversy; (3) Proctor rendered legal advice to Barker regarding the use of contracts for deed; (4) Proctor advised Barker of his hourly rate, the amount of time he had already spent on services for her, and the total amount of time he expected to spend for resolution of her issues; and (5) Barker told Proctor that she believed he was her attorney. When considered collectively, this evidence permits an inference that Barker intended for Proctor to provide legal services for her, and that Proctor agreed to undertake that legal representation.

Proctor's attorney-client relationship with Barker focused on the contract for deed, which is "the same or a substantially related matter" as Proctor's attorney-client relationship with Hendricks. *See* Tex. Disciplinary R. Prof'l Conduct 1.09(a)(3). Because there is a substantial relationship between the two representations, Barker established "as a matter of law that an appearance of impropriety exists" and that she "is entitled to a conclusive presumption that confidences and secrets were imparted to [her] former attorney." *See NCNB Tex. Nat'l Bank v. Coker*, 765 S.W.2d 398, 400 (Tex. 1989) (orig. proceeding); *see also id.* ("Although the former attorney will not be presumed to have revealed the confidences to his present client, the trial court should perform its role in the internal regulation of the legal profession and disqualify counsel from further representation in the pending litigation."). Accordingly, Barker was not required to prove that she was actually prejudiced, and the trial court did not abuse its discretion by disqualifying Proctor. *See, e.g., In re Quintanilla*, No. 14-16-00473-CV, 2016 WL 4483743, at *4 (Tex. App.—Houston [14th Dist.] Aug. 25, 2016, orig. proceeding) (per curiam) (mem. op.) (in a divorce case where the attorney briefly agreed to represent the wife before he realized that he had already been retained by the husband, the wife was not required to prove that the attorney had revealed her confidences to the husband because prejudice was presumed).

Hendricks counters that disqualification is inappropriate because Barker did not personally appear at the hearing and there was no evidence formally admitted. Hendricks cites no authority on his claim that the movant must personally appear at her own hearing, and we are aware of none.

As for his complaint about no evidence being formally admitted, the trial court was free to consider the statements from the attorneys at the hearing on the motion to disqualify. Normally, an attorney's statements must be under oath to be

considered evidence, but the oath requirement can be waived when the opponent does not object and the opponent knows or should know that an objection is necessary. *See Banda v. Garcia*, 955 S.W.2d 270, 272 (Tex. 1997) (per curiam). Neither attorney objected to the other's statements during the hearing, even though the evidentiary nature of their statements was apparent. *See Approximately $30,400 v. State*, No. 14-07-00342-CV, 2008 WL 4472931, at *3 (Tex. App.—Houston [14th Dist.] Oct. 7, 2008, no pet.) (mem. op.). Thus, the trial court was free to consider Proctor's statements about how he became associated with Barker, and in particular, his statement that Barker once told him that she believed he was her attorney.

Additionally, the trial court was free to consider the letter from Proctor to Barker, which was discussed at length during the hearing, even though the letter was not formally offered and admitted into evidence. Hendricks attached this letter to his own petition, Barker attached a copy of it to her motion to disqualify, and Proctor authenticated it at the hearing when he affirmatively stated that he had sent the letter to Barker. For all practical purposes, the letter was admitted because it was on file with the trial court, the parties treated the letter as evidence during the hearing, there were no contested issues presented with the letter, and the trial court relied on the letter when making its decision. *See In re A.G.C.*, 279 S.W.3d 441, 450 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (holding that the appellant could not complain that an affidavit and mediated settlement agreement were not in evidence, even though those documents were not formally offered and admitted); *cf. Sanchez v. Bexar Cty. Sheriff's Dep't*, 134 S.W.3d 202, 203 (Tex. 2004) (per curiam) ("We have held that an administrative record that is not objected to and that the district court and the parties relied on as evidence is, for all practical purposes, admitted.").

12

In a related point, Hendricks argues that the letter does not prove the existence of an attorney-client relationship because Proctor sent the letter to Barker on behalf of him (Hendricks), the actual client. This point is not persuasive. Under our standard of review, we must defer to the trial court's implied finding that Proctor engaged Barker as a client because that finding is supported by the evidence. And if Proctor served as an intermediary—or "broker" as the trial court described it—between Barker and Hendricks, both of them being clients, then Proctor could not represent either client in litigation that was the subject of the intermediation. *See* Tex. Disciplinary R. Prof'l Conduct 1.07(c). Accordingly, the disqualification order was not improper in the intermediary scenario. *See Moore v. Altra Energy Techs., Inc.*, 295 S.W.3d 404, 406–07 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (per curiam) (holding that the mediator's law firm was disqualified from representing one of the parties from the mediation).

In another point, Hendricks argues that Barker waived her right to complain about Proctor's involvement because she did not file her motion to disqualify in a timely manner. More specifically, Hendricks argues that the motion was untimely because Barker knew that Proctor represented him "some three years" before suit was filed. *See Vaughan v. Walther*, 875 S.W.2d 690, 690 (Tex. 1994) (orig. proceeding) (per curiam) ("A party who fails to file its motion to disqualify opposing counsel in a timely manner waives the complaint.").

Hendricks did not preserve this point because he did not raise it in the trial court. *See* Tex. R. App. P. 33.1. But even if he had preserved it, we do not believe that Barker's motion was untimely. Barker could not file her motion until the litigation had commenced, and once it had commenced, she did not delay in bringing the matter to the trial court's attention. Barker filed her original answer forty-five days after Hendricks filed his original petition, and nine days after that,

she moved to disqualify Proctor. The motion was filed well in advance of discovery, and it cannot be characterized as a dilatory trial tactic. *See EPIC Holdings*, 985 S.W.2d at 52–53 (concluding that the delay in filing the motion to disqualify was not prejudicial because "almost no discovery" had been conducted at the time of filing); *Spears v. Fourth Court of Appeals*, 797 S.W.2d 654, 656 (Tex. 1990) (orig. proceeding) (holding that "courts must adhere to an exacting standard when considering motions to disqualify so as to discourage their use as a dilatory trial tactic"). We conclude that Barker's motion was timely and that she did not waive her complaint. *See In re Hoar Constr., L.L.C.*, 256 S.W.3d 790, 798 (Tex. App.—Houston [14th Dist.] 2008, orig. proceeding) (holding that the trial court did not abuse its discretion by implicitly rejecting a waiver argument where the motion to disqualify was filed after a three-month delay).

We overrule Hendricks's second issue.

## MISCELLANEOUS POINTS

We finally address several requests that Hendricks makes in his prayer for relief. In addition to his request that we set aside the dismissal order and the disqualification order, Hendricks asks that we set aside an order on a motion for protection. Because Hendricks did not provide any argument in connection with this request, we need not consider it. *See* Tex. R. App. P. 38.1(i).

Hendricks also requests that we issue an order for Barker to be deposed and for the trial judge to be recused. These matters would come into play only in the event of a remand. Because Hendricks presented no issues on appeal that would require us to reverse the trial court's order and remand the case for a new trial, we need not consider these requests either.

**CONCLUSION**

The trial court's order dismissing the case for want of prosecution is affirmed.

/s/ Tracy Christopher
Justice

Panel consists of Chief Justice Frost and Justices Boyce and Christopher. (Frost, C.J., concurring).