**Opinion issued August 11, 2022**



In The

# Court of Appeals

For The

# First District of Texas

————————————

**NO. 01-20-00826-CV**

————————————

**RODRIGO GONZALEZ, JR., Appellant**

**V.**

**BRENT MARSHALL WASSERSTEIN, Appellee**

On Appeal from the 295th District Court
Harris County, Texas
Trial Court Case No. 2017-58300

**MEMORANDUM OPINION**

Appellant Rodrigo Gonzalez, Jr. sued appellee Brent Marshall Wasserstein, a Texas attorney, for committing legal malpractice and violating the Deceptive Trade Practices Act (DTPA).[1] The trial court granted Gonzalez's motion for partial

---

[1]     *See* TEX. BUS. & COM. CODE §§ 17.41–17.63.

summary judgment on the liability portion of his claims and ordered a trial only as to damages. Following a bench trial on damages, the court signed a final judgment awarding Gonzalez $5,000 in actual damages against Wasserstein. Gonzalez, acting pro se on appeal, challenges the trial court's damages award, contending that he should have been awarded additional damages.

Because Gonzalez has not shown that the trial court erred in rendering the damages award, we affirm.

## Background

In 2010, Gonzalez—a Texas prison inmate serving a 50-year sentence for aggravated kidnapping—testified in an internal prison investigation against D. Fontenot, a prison guard accused of assaulting another inmate. Three days after Gonzalez testified, Fontenot reported that Gonzalez had threatened to cut his throat. A major disciplinary action was brought against Gonzalez for the threat, and he was moved to another prison unit. The unit had an outbreak of varicella-zoster virus— commonly known as chicken pox—and Gonzalez contracted the virus.

Gonzalez claimed that he had not threatened Fontenot and that the allegation about the threat was false. Gonzalez asserted that the allegation and his transfer to the prison unit with the viral outbreak had been in retaliation for his testimony against Fontenot. Gonzalez administratively appealed the disciplinary action, but the appeal was unsuccessful.

Prison officials then found a makeshift weapon under Gonzalez's prison bunk. Gonzalez received a second major disciplinary action for the weapon. Gonzalez alleged that the weapon had been planted under his bunk in further retaliation for his testimony against Fontenot. As a result of the second disciplinary action, Gonzalez was moved to a maximum security unit, segregated from the general prison population, which Gonzalez described as "segregative confinement" and "solitary confinement." Gonzalez administratively appealed the second major disciplinary action, but that appeal was also unsuccessful.

With the aid of his parents, Gonzalez retained Wasserstein, a Texas lawyer, to file a lawsuit pursuant to 42 U.S.C. section 1983[2] against prison officials for their alleged retaliatory conduct. Gonzalez's parents signed a contract with Wasserstein and paid him to represent their son. In addition to meeting with Gonzalez's parents, Wasserstein also met with Gonzalez three times in prison to discuss the potential lawsuit.

Wasserstein never filed suit against the prison officials, and Gonzalez retained another attorney, K. Ahn, to sue Wasserstein. Gonzalez sued Wasserstein in 2017. In his petition, Gonzalez claimed that Wasserstein had acted negligently by not filing

---

[2]     *See* 42 U.S.C. § 1983 ("Every person who, under color of [law] . . . subjects . . . any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .").

his section 1983 lawsuit before the statute of limitations expired. Gonzalez also alleged that Wasserstein had not disclosed that the suit had not been filed, and he alleged that Wasserstein had misrepresented (1) that Wasserstein was qualified and capable of filing the suit, (2) that he thought Gonzalez's claim had merit, (3) that he intended to file suit, and (4) that he had filed suit. Gonzalez alleged that Wasserstein's acts and omissions constituted legal malpractice and violations of the DTPA. Gonzalez sought actual damages, including mental anguish damages, exemplary damages, treble damages under the DTPA, and attorney's fees.

Wasserstein answered the suit, generally denying Gonzalez's claims. Gonzalez filed a traditional motion for partial summary judgment regarding the liability portion of his legal malpractice and DTPA claims. His summary-judgment evidence included his own affidavit and his parents' affidavits along with documents incorporated by reference into the affidavits. Wasserstein did not respond to the motion.

On November 28, 2018, the trial court granted Gonzalez's motion for partial summary on liability. The trial court noted in its order that Wasserstein had not filed a response to the motion. The trial court's order granted Gonzalez's motion for summary judgment "ONLY as to liability on his legal malpractice and DTPA claims." It ordered that "[a] trial will be held on damages." About one year after the trial court granted the partial summary judgment on liability, Gonzalez filed a

motion for summary judgment as to damages even though the trial court had ordered that damages would be determined at trial. The record does not reflect that the trial court ruled on Gonzalez's motion for summary judgment on damages.

On October 2, 2020, the trial court conducted a bench trial on the damages portion of Gonzalez's claims. Wasserstein represented himself at the hearing, and Ahn represented Gonzalez. Wasserstein and Ahn appeared by video teleconference, and Gonzalez appeared by telephone from prison.

Gonzalez testified that, as a result of the alleged retaliatory actions filed against him by prison officials, he lost his opportunity to be paroled and his "good time credit" toward early release that he had earned. Gonzalez also testified that, as a result of the retaliatory actions, he was placed in prison units that were unsanitary and unhealthy, causing him physical and psychological injury. Specifically, he testified that he was first placed in a prison unit for three weeks where he contracted the varicella-zoster virus. He was then placed in solitary confinement in a maximum security unit where he stayed for 1,121 days until being moved back to the general prison population.

Gonzalez described the conditions that he lived in while in solitary confinement. He testified that he was required to stay in his cell except when he was taken out to shower. He stated that the water was either very cold or very hot and that his food was always served cold. Gonzalez testified that the noise level in the

5

unit was "unbearable" because of the yelling of the other inmates. He claimed that he breathed in chemicals, such as mace, used by the guards to subdue other inmates. He also testified that he was housed with "unstable inmates," some of whom tried to commit suicide.[3] He stated that other inmates would light their mattresses on fire, causing him to breathe smoke.

Gonzalez argued that if Wasserstein had filed a section 1983 suit against the prison officials, then the retaliatory actions against him "would have been reviewed and probably stopped." He claimed that he may not have stayed in solitary confinement for as long as he did and that his good-time credit and right to parole may have been restored. Gonzalez asked the trial court to award him $200,000 in "actual damages," more specifically for mental anguish damages, and requested that the damages be tripled "pursuant to the DTPA" to $800,000.

Gonzalez indicated that he had received medical care for the physical and psychological harm he claimed to have suffered, but he acknowledged on cross-examination that he had not offered any medical records to support his claim and did not testify in detail about his treatment. Gonzalez also acknowledged that he had unsuccessfully appealed the disciplinary action regarding the weapon found under

---

[3] Gonzalez also offered into evidence, without objection from Wasserstein, his own affidavit as an exhibit that similarly described the "hardships" and damages that he claimed to have suffered in prison.

his bunk through the prison's administrative process, which found that he had possessed the weapon.

Wasserstein stated that the prison conditions on which Gonzalez based his damages were "part of the normal conditions of prison." Wasserstein told the trial court that, at the time he represented Gonzalez, it was his opinion that Gonzalez had not been retaliated against by prison officials. He stated that he did not file Gonzalez's suit because he thought it would be "frivolous litigation," and he stated that he had told Gonzalez's family that filing suit would be frivolous.

Before the damages trial, the trial judge who signed the order granting partial summary judgment to Wasserstein on liability had finished her term as judge, and it was her successor who conducted the damages trial and signed the final judgment. At the end of damages trial, the trial court stated,

> [A]lthough Judge Baker has, in fact, entered a liability finding on the legal malpractice case and the DTPA case, the court finds that the damages that have been discussed here are more than—are very—I'm sorry, based upon a preponderance of the evidence, are nothing more than speculation.
>
> And as such, the Court awards damages in the amount of $5,000 for the plaintiff, as against the defendant, Mr. Wasserstein.

Ahn asked the trial court if the damages would "be tripled" under the DTPA. The trial court responded, "It will not because there's no finding of intentional conduct." The trial court signed a final judgment recognizing the earlier rendition of the partial summary judgment on liability and awarding Gonzalez $5,000 in "actual

7

damages," post-judgment interest, and court costs. Findings of fact and conclusions of law were neither requested nor filed.

Gonzalez now appeals the trial court's judgment, asserting that he was entitled to more damages than he was awarded. Although represented in trial court by counsel, Gonzalez is pro se on appeal. Wasserstein has not appealed the judgment awarding damages against him.

## Discussion

Raising six issues, Gonzalez challenges the trial court's damages award.

## A.     Adequate Time to Present Evidence

In his first issue, Gonzalez contends that the trial court "rushed" the trial proceedings on damages, "forcing" his counsel "to cut short his [direct] examination" of Gonzalez. He asserts that, as a result, his attorney was not given adequate time to elicit testimony from him to show that Wasserstein "acted knowingly or intentionally," elements relevant to recovering treble damages under the DTPA. *See* TEX. BUS. & COM. CODE § 17.50(b)(1) (providing for recovery of (1) up to three times economic damages if conduct violating DTPA was committed knowingly or intentionally and (2) up to three times mental anguish damages if committed intentionally). Gonzalez claims, "The limited time given by the trial court was clearly insufficient to allow appellant [to] establish the complex aspects required by the trial court in order to grant additional damages under the DTPA provision."

8

To support his claim that the trial court "cut" the proceedings short, Gonzalez points to the following exchange between the court and his attorney, Ahn:

THE COURT: Okay. Mr. Ahn, you know that we only have an hour for this hearing, correct?

MR. AHN: Yes, Your Honor. Will—we're almost done with—Your Honor.

. . . .

THE COURT: I have people coming in for an in-person hearing at one o'clock, they have begun to arrive, hence I have put my mask on.

MR. AHN: Yes, Your Honor.

We disagree with Gonzalez that the cited exchange shows that the trial court ended trial prematurely or otherwise limited Gonzalez's direct examination. As the exchange shows, Gonzalez's attorney, Ahn, did not inform the trial court that he needed or desired more time for direct examination. To the contrary, Ahn indicated to the court that he was "almost done" with his direct examination of Gonzalez.

Moreover, if he had a complaint regarding the amount of time that he had to present his evidence, Gonzalez was required to make a timely, specific objection and obtain a ruling from the trial court about the time limitation in order to preserve the complaint for appellate review. *See* TEX. R. APP. P. 33.1(a). Gonzalez made no such complaint in the trial court. Thus, any error regarding the time limitation was not preserved for our review *See id.*; *Ron v. Ron*, 604 S.W.3d 559, 573 (Tex. App.—Houston [14th Dist.] 2020, no pet.) (holding that appellant failed to preserve

9

complaint that trial court had "abused its discretion by not affording her the opportunity to present her defense and rest her case" because appellant had not objected when trial court informed parties that temporary-injunction hearing needed to end by 5:00 p.m.).

We are also mindful that "[e]very trial court has the inherent power to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." *In re B.G.B*, 580 S.W.3d 310, 318 (Tex. App.—Tyler 2019, no pet.) (citing *State v. Gaylor Inv. Trust P'ship*, 322 S.W.3d 814, 819 (Tex. App.—Houston [14th Dist.] 2010, no pet.)). While this inherent power is "not unfettered," a trial court's inherent power, together with applicable rules of procedure and evidence, accord trial courts broad discretion in handling trials. *See Metzger v. Sebek*, 892 S.W.2d 20, 38 (Tex. App.—Houston [1st Dist.] 1994, writ denied); *see also* TEX. R. EVID. 611(a) (giving trial court "reasonable control over the mode and order of examining witnesses and presenting evidence").

Finally, even "[e]rroneous rulings require reversal only if a review of the record reveals the error was harmful." *Sw. Energy Prod. Co. v. Berry–Helfand*, 491 S.W.3d 699, 728 (Tex. 2016). Before it may reverse a judgment based on an error of law, a reviewing court "must find that the error amounted to such a denial of the appellant's rights as was reasonably calculated to cause and probably did cause 'the rendition of an improper judgment,' or that the error 'probably prevented the

10

appellant from properly presenting the case [on appeal].'" *G & H Towing Co. v. Magee*, 347 S.W.3d 293, 297 (Tex. 2011) (quoting TEX. R. APP. P. 44.1(a)). Not only must an appellant preserve error by timely objecting, but he must develop a record sufficient to show the error was harmful. *See Nguyen v. Watts*, 605 S.W.3d 761, 791 (Tex. App.—Houston [1st Dist.] 2020, pet. denied) (recognizing that it is complaining party's burden to show harm on appeal).

Here, Gonzalez asserts that he was harmed because his attorney did not have adequate time to elicit testimony from him to show that Wasserstein had acted knowingly or intentionally to support his claim for treble damages under the DTPA. He also intimates in his brief that he would have offered additional testimony to support a greater amount of actual damages. However, Gonzalez did not make an offer of proof or informal bill of exception regarding what additional testimony or other evidence he was prevented from offering. Thus, the record does not demonstrate that Gonzalez was harmed by any time limitation placed by the trial court on his presentation of evidence. *See* TEX. R. APP. P. 44.1(a); *see also Bank of Am., N.A. v. Ochuwa*, No. 01-19-00368-CV, 2020 WL 5269416, at *4 (Tex. App.—Houston [1st Dist.] Sept. 3, 2020, no pet.) (mem. op.) (holding that, in suit on credit-card account where trial court excluded plaintiff-creditor's business-record affidavit and immediately rendered judgment for defendant-debtor before close of plaintiff-creditor's case, plaintiff-creditor failed to show harm by making offer of proof or

informal bill of exception of any other evidence it had been prevented from offering by trial court's premature ruling on merits of case).

We overrule Gonzalez's first issue.

## B.     Consideration of Summary-Judgment Evidence

In his second issue, Gonzalez contends that the trial court erred when it considered only the evidence offered at the damages trial and did not consider his summary-judgment evidence—evidence that was not admitted at trial. He points out that, in its final judgment, the trial court stated that it had rendered judgment as to damages "[a]fter hearing the testimony presented" at trial. Gonzalez asserts that the trial court would have been compelled to award him greater and additional actual damages and treble damages under the DTPA had it considered his summary-judgment evidence.

As support for his argument that the trial court should have considered his summary-judgment evidence and awarded greater and additional damages, Gonzalez cites the summary-judgment evidence attached to his motion for partial summary judgment on liability that was granted by the trial court. But he primarily relies on the evidence attached to his motion for summary judgment on damages, a motion on which the trial court never ruled. For both motions, the evidence to which Gonzalez cites are his and his parents' affidavits and documents incorporated by reference into the affidavits. While affidavits are admissible during summary-

12

judgment proceedings, *see* TEX. R. CIV. P. 166a(a) (allowing supporting affidavits to accompany summary-judgment motion), "absent authority to the contrary, affidavits are not, as a rule, admissible in a trial as independent evidence to establish facts material to the issues being tried."[4] *Stephens v. City of Reno*, 342 S.W.3d 249, 253 (Tex. App.—Texarkana 2011, no pet.) (citing *Roberts v. Mullen*, 446 S.W.2d 86 (Tex. App.—Dallas 1969, writ ref'd n.r.e.) (holding that, "[e]xcept in instances specified by statute or rule (such as summary judgments, pauper's oath proceedings, etc.) affidavits are not evidence in contested cases")).

Gonzalez has not cited legal authority for his contention that the trial court should have considered his summary-judgment evidence even though it was not admitted at trial. *See* TEX. R. APP. P. 38.1(i) (requiring argument to contain "appropriate citations to authorities and to the record"); *Guimaraes v. Brann*, 562 S.W.3d 521, 538 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) ("Failure to cite to appropriate legal authority or to provide substantive analysis of the legal issues presented results in waiver of a complaint on appeal."). Nor did we find any authority supporting his contention. To the contrary, this and other courts have recognized that exhibits attached to summary-judgment motions "are not considered evidence outside the summary-judgment context unless they are admitted into the

---

[4]     As mentioned, Gonzalez offered his affidavit into evidence at trial, without objection from Wasserstein. Gonzalez asserted that the affidavit depicted the "hardships" he suffered in segregated confinement.

trial court's record." *Happy Jack Ranch, Inc. v. HH & L Dev., Inc.*, No. 03-12-00558-CV, 2015 WL 6832631, at *5 n.7 (Tex. App.—Austin Nov. 6, 2015, pet. denied) (mem. op.) (citing *Celadon Trucking Servs., Inc. v. Titan Textile Co., Inc.*, 130 S.W.3d 301, 307 (Tex. App.—Houston [14th Dist.] 2004, pet. denied); *Noble Exploration, Inc. v. Nixon Drilling, Co.*, 794 S.W.2d 589, 592 (Tex. App.—Austin 1990, no writ)); *City of Galveston v. Shu*, 607 S.W.2d 942, 944 (Tex. App.—Houston [1st Dist.] 1980, no writ)). Therefore, Gonzalez has failed to show that the trial court erred by not considering his summary-judgment evidence.

We overrule Gonzalez's second issue.

## C. Other Unpreserved Challenges

We next consider Gonzalez's fourth issue in which he raises another evidentiary challenge. He complains that Wasserstein was permitted to elicit testimony from him on cross-examination about various topics, which he argues were not relevant. Specifically, Gonzalez complains that Wasserstein was permitted to elicit testimony from him (1) regarding the length of his prison sentence and (2) suggesting that he did not hire Wasserstein.

We review evidentiary rulings using an abuse of discretion standard, *U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 132 (Tex. 2012), but there can be no complaint of an abuse of discretion when the trial court is not asked to exercise any discretion, *see Caggiano-Boer v. Miller*, No. 05-19-01219-CV, 2021 WL 2373850,

at *4 (Tex. App.—Dallas June 10, 2021, no pet.) (mem. op.). In other words, the party opposing the evidence must object to allow the trial court to exercise its discretion and to preserve the opponent's complaint for appellate review. *See* TEX. R. APP. P. 33.1(a). To preserve a complaint, the record must show that (1) the complaint was presented to the trial court by a timely request, objection, or motion stating the specific grounds for the desired ruling if the specific grounds are not apparent from the context, and (2) the trial court ruled on the request. *Id.*; *Guillory v. Boykins*, 442 S.W.3d 682, 689 (Tex. App.—Houston [1st Dist.] 2014, no pet.).

In the trial court, Gonzalez made only one relevance objection to Wasserstein's questioning. That objection was to a question Wasserstein asked about whether Gonzalez had accused his criminal defense attorney of misconduct. The trial court overruled the objection. Gonzalez made no objection to Wasserstein's questioning about his prison sentence or about whether he had hired Wasserstein, the topics of inquiry of which he now complains on appeal. Because he made no objection to those two topics, he has not preserved his complaints for appeal. *See* TEX. R. APP. P. 33.1(a). And, in any event, we presume in a bench trial that the trial court, "sitting as the fact finder, disregarded any improperly admitted evidence." *Sw. Bell Media, Inc. v. Lyles*, 825 S.W.2d 488, 498 (Tex. App.—Houston [1st Dist.] 1992, writ denied); *see Kenny v. Portfolio Recovery Assocs., LLC*, 464 S.W.3d 29, 33 (Tex. App.—Houston [1st Dist.] 2015, no pet.) ("Because this was a bench trial,

15

we presume the trial court disregarded the inadmissible portion of the business record affidavit.").

Gonzalez also complains on appeal that Wasserstein was "allowed to argue that Mr. Gonzalez has a history of frivolous litigation against other attorneys and people at jail," when no evidence was introduced to support the argument. But Gonzalez did not preserve his complaint by objecting to Wasserstein's remarks. *See* TEX. R. APP. P. 33.1(a). Further, Gonzalez's brief provides no argument or citation to legal authority to support his complaint regarding the remarks. *See* TEX. R. APP. P. 38.1(i); *Guimaraes*, 562 S.W.3d at 538. Thus, he has also waived his challenges to the complained-of argument based on inadequate briefing. *See* TEX. R. APP. P. 38.1(i); *Guimaraes*, 562 S.W.3d at 538.

We overrule Gonzalez's fourth issue.

## D.     Mental Anguish and Treble Damages

In his third issues, Gonzalez contends that the evidence was legally and factually insufficient to support the trial court's determination that he was not entitled to treble damages under the DTPA. Gonzalez also contends that the evidence was legally and factually insufficient to support the trial court's determination that he was not entitled to mental anguish damages. But, as discussed below, Gonzalez has not shown that the trial court's $5,000 award of "actual damages" was not an award of mental anguish damages.

### 1. *Standard of review*

When, as here, neither party requests findings of fact and conclusions of law following a nonjury trial, all fact findings necessary to support the trial court's judgment are implied. *See Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 480 (Tex. 2017). If the reporter's record is filed on appeal, as it was here, implied findings may be challenged on factual- and legal-insufficiency grounds in the same manner as jury findings or a trial court's express findings of fact. *Id.*

When determining whether legally sufficient evidence supports a finding, we must consider evidence favorable to the finding if the factfinder could reasonably do so and disregard evidence contrary to the finding unless a reasonable factfinder could not. *Id.* If a party attacks the legal sufficiency of an adverse finding on an issue on which it bears the burden of proof, the judgment must be sustained unless the record conclusively establishes all vital facts in support of the issue. *Id.* In other words, the party must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue on which he has the burden of proof. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). We consider the evidence in the light most favorable to the trial court's judgment and indulge every reasonable inference that supports it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005).

When a party challenges the factual sufficiency of an adverse finding on an issue on which he had the burden of proof, he must demonstrate that the adverse

17

finding is against the great weight and preponderance of the evidence. *Francis*, 46 S.W.3d at 242. We consider and weigh all of the evidence, and we "can set aside a verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust." *Id.*

In a bench trial, the trial court is the sole judge of the witnesses' credibility and the weight to be given their testimony. *See Zenner v. Lone Star Striping & Paving L.L.C.*, 371 S.W.3d 311, 314 (Tex. App.—Houston [1st Dist.] 2012, pet. denied). In resolving factual disputes, the trial court may choose to believe one witness and disbelieve others, and it may resolve any inconsistencies in a witness's testimony. *Id.*

An appellant may not challenge a trial court's conclusions of law for factual sufficiency, but we may review the legal conclusions drawn from the facts to determine their correctness. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). We review the trial court's conclusions of law de novo and uphold them if they can be sustained on any legal theory supported by the evidence. *Id.*; *Zenner*, 371 S.W.3d at 314–15.

### 2.   *Mental anguish damages*

The trial court's judgment awards Gonzalez "[a]ctual damages in the amount of $5,000.00." On appeal, Gonzalez contends that the evidence "is legally and factually sufficient to . . . support the award of mental anguish damages as provided

18

by the DTPA statute." He asserts that the $5,000 actual damages award was for economic damages and that, in addition to the award of economic damages, he was entitled to mental anguish damages. In advancing this assertion, Gonzalez assumes, without support in the record, that the trial court's award of $5,000 in "actual damages" was necessarily an award of economic damages, not an award of mental anguish damages.

Under the DTPA, a consumer may recover not only economic damages but also mental anguish damages if the defendant's conduct was committed "knowingly." TEX. BUS. & COM. CODE § 17.50(b). "Knowingly" means "actual awareness, at the time of the act or practice complained of, of the falsity, deception, or unfairness of the act or practice giving rise to the consumer's claim[.]" *Id.* § 17.45(9). Gonzalez does not dispute that Wasserstein's conduct was committed "knowingly." To the contrary, he contends that it was.

The DTPA defines "economic damages" to mean "compensatory damages for pecuniary loss, including costs of repair and replacement. The term does not include exemplary damages or damages for physical pain and mental anguish, loss of consortium, disfigurement, physical impairment, or loss of companionship and society." *Id.* § 17.45(11). The DTPA does not define "mental anguish damages" nor does it define "actual damages." However, the Supreme Court of Texas explained in *Latham v. Castillo* that, under a former version of the DTPA, a consumer was

19

permitted to maintain an action when the defendant's acts constituted a producing cause of "actual damages."[5] 972 S.W.2d 66, 69 (Tex. 1998). The *Latham* court recognized that it had previously stated that "the term 'actual damages,' as used in the [former] DTPA, means those [damages] recoverable at common law." *Id.* (citing *Brown v. American Transfer & Storage Co.*, 601 S.W.2d 931, 939 (Tex. 1980)). The court then explained, "It is axiomatic that mental anguish damages *are* actual damages recoverable at common law for 'some common law torts . . . , and by analogy for knowing violations of certain statutes such as the Deceptive Trade Practices Act.'" *Id.* (emphasis and ellipsis in original) (quoting *City of Tyler v. Likes*, 962 S.W.2d 489, 495 (Tex. 1997)).

As commonly defined, the term "actual damages" means "[a]n amount awarded to a complainant to compensate for a proven injury or loss; damages that repay actual losses." *Actual Damages*, BLACK'S LAW DICTIONARY (11th ed. 2019); *see Marauder Corp. v. Beall*, 301 S.W.3d 817, 822 (Tex. App.—Dallas 2009, no pet.) ("The sole purpose of actual damages is compensation."). In short, the term "actual damages" includes more than "economic damages" and by definition encompass "mental anguish damages."

---

[5]     The DTPA no longer references the recovery of "actual damages" as it did in the former version but now instead provides that consumers may recover—depending on the trier of fact's findings—economic damages, mental anguish damages, and additional statutory damages up to three times the award of economic or mental anguish damages. *See* TEX. BUS. & COM. CODE § 17.50(b)(1).

The record also does not support Gonzalez's contention that the actual-damages award was necessarily an award of economic damages. At trial, Gonzalez's testimony was geared toward supporting an award of mental anguish damages, not an award of economic damages. The gist of his testimony was that the conditions he had been subjected to in solitary confinement had harmed him physically and mentally. He did not testify that he had suffered a pecuniary loss. *See* TEX. BUS. & COM. CODE § 17.45(11). Gonzalez testified that he was seeking $200,000 in actual damages and clarified that the $200,000 in actual damages that he sought was for mental anguish damages. He requested the trial court to triple the mental anguish damages as permitted under the DTPA for a total award of $800,000. Gonzalez did not testify that he was seeking economic damages, nor did he otherwise request an award of economic damages at trial.

As appellant, Gonzalez has the burden to show error on appeal. *See Christiansen v. Prezelski*, 782 S.W.2d 842, 843 (Tex. 1990) ("The burden is on the appellant to see that a sufficient record is presented to show error requiring reversal."). Gonzalez asserts that the trial court erred by not awarding him mental anguish damages because the evidence was legally and factually insufficient to support the trial court's denial of his request for those damages, and the evidence was legally and factually sufficient to support an award of mental anguish damages. But he has failed to present a record establishing the premise of his argument—that

21

he was not awarded mental anguish damages. Gonzalez did not request findings of fact and conclusions of law, so the specific basis of the trial court's actual damages award is unknown. And, as discussed, the record and the law does not support Gonzalez's assertion that he was necessarily awarded economic damages and not mental anguish damages when the trial court awarded him "actual damages."

We hold that Gonzalez has failed to demonstrate the error of which he now complains because he has failed to show that he was not awarded mental anguish damages by the trial court. Thus, we need not engage in a sufficiency-of-the evidence analysis regarding mental anguish damages.[6]

### 3.      *Treble damages under the DTPA*

At the conclusion of trial, Gonzalez inquired whether the damages awarded by the trial court would be tripled as permitted by the DTPA. The trial court responded that the damages would not be tripled "because there's no finding of intentional conduct." Gonzalez contends that the evidence was legally and factually insufficient to support the trial court's denial of his request for treble damages under the DTPA because he established that Wasserstein acted "intentionally."

---

[6]     Gonzalez asserts in his fifth issue that the trial court impermissibly allowed Wasserstein to require him to offer medical records as a "condition precedent" to recover mental anguish damages. Because we have determined that Gonzalez has failed to demonstrate that he has not already recovered mental anguish damages, we need not decide this issue. But, even if we were to address it, we note that Gonzalez failed to raise his complaint regarding the impermissible "condition precedent" in the trial court, thus, he failed to preserve error regarding the complaint. *See* TEX. R. APP. P. 33.1(a).

22

The DTPA provides that, "if the trier of fact finds the conduct [violating the DTPA] was committed intentionally," then "the trier of fact may award not more than three times the amount of damages for mental anguish and economic damages." TEX. BUS. & COM. CODE § 17.50(b)(1). The DTPA defines "intentionally" to mean

> actual awareness of the falsity, deception, or unfairness of the act or practice, or the condition, defect, or failure constituting a breach of warranty giving rise to the consumer's claim, coupled with the specific intent that the consumer act in detrimental reliance on the falsity or deception or in detrimental ignorance of the unfairness.

TEX. BUS. & COM. CODE § 17.45(13).

On appeal, Gonzalez contends that he was entitled to treble damages under the DTPA because the evidence showed that Wasserstein had acted intentionally, as defined by the DTPA, with respect to the complained-of conduct involved in his representation of Gonzalez. To succeed on his legal-sufficiency challenge, Gonzalez—as the party with the burden of proof—must show that the evidence conclusively established that Wasserstein acted intentionally. *See Shields*, 526 S.W.3d at 480.

Evidence is conclusive only if reasonable people could not differ in their conclusions. *City of Keller*, 168 S.W.3d at 816. In general, we recognize several types of evidence as being conclusive, including undisputed evidence that allows just one logical inference, undisputed evidence of undeniable physical facts, undisputed evidence admitted as being true, and disputed evidence that definitively

23

negates contrary proof in some fashion, such as a scientifically reliable diagnostic test establishing paternity in the face of contrary testimony. *Prosper Fla., Inc. v. Spicy World of USA, Inc*., No. 01-20-00104-CV, — S.W.3d —, 2022 WL 1249955, at *6 (Tex. App.—Houston [1st Dist.] Apr. 28, 2022, no pet.) (citing *City of Keller*, 168 S.W.3d at 814–16). Unless the evidence is conclusive, the factfinder is entitled to weigh the evidence and to assess witness credibility. *See id.* (citing *City of Keller*, 168 S.W.3d at 816–17).

Aside from his summary-judgment evidence—which, as discussed, was not admitted at trial—Gonzalez relies on his own trial testimony to establish that Wasserstein acted intentionally. Gonzalez testified that Wasserstein represented to him that he was qualified to file the section 1983 suit, and he testified that Wasserstein did not inform him that suit had not been filed until after limitations had expired. However, because more than one logical inference can be made from it, the cited testimony does not conclusively show that Wasserstein acted intentionally to deceive Gonzalez about the filing of the section 1983 suit. Other than the nefarious intent ascribed by Gonzalez, the trial court may have inferred that Wasserstein believed he was qualified to handle the suit and that Wasserstein neglected to inform Gonzalez that the suit had not been filed without any intent that Gonzalez detrimentally rely on the omission.

24

Gonzalez also points out that he responded, "yes," when his attorney asked him whether Wasserstein had told him "several times" that suit had been filed and had shown Gonzalez a purportedly filed petition. But, other than his one-word answer, Gonzalez did not elaborate regarding those alleged representations. Instead, immediately after answering, Gonzalez testified that, during each of his in-person visits with Wasserstein and in written correspondence he sent to Wasserstein, Gonzalez continually reminded Wasserstein that suit needed to be filed before limitations expired.

Considering the testimony overall, the trial court may have found that Gonzalez's testimony, indicating that he had reminded Wasserstein to file suit throughout the time he communicated with him, was inconsistent with Gonzalez's affirmative answer to his attorney's question about whether Wasserstein had told him that he had filed suit. The trial court, in its role as factfinder, may have reconciled the inconsistency in Gonzalez's testimony by disbelieving that Wasserstein told Gonzalez that suit had been filed. *See Dunn v. Hernandez*, No. 01-19-00832-CV, 2021 WL 2832968, at *5 (Tex. App.—Houston [1st Dist.] July 8, 2021, no pet.) (mem. op.) (noting that (1) trial court's role in bench trial includes reconciling any inconsistencies or conflicts in evidence and (2) "[t]he trial court may believe or disregard all or any part of the testimony of any witness").

25

At trial, Wasserstein also disputed Gonzalez's claim that he told Gonzalez that suit had been filed. Wasserstein informed the trial court that, at the time he represented Gonzalez, it was his opinion that Gonzalez had not been retaliated against by prison officials. Wasserstein stated on the record that the reason he did not file Gonzalez's suit was because he believed it would be "frivolous litigation." He stated that he told Gonzalez's family that filing suit would be frivolous, indicating that Gonzalez knew suit would not be filed. Thus, the trial court had controverting evidence from which it could have inferred that Wasserstein had not told Gonzalez that he had filed suit.[7] Because this point was disputed, the trial court

---

[7] We note that Wasserstein's statements were not under oath. Normally, an attorney's statements must be under oath to be considered as evidence, but the oath requirement can be waived when the opponent does not object and knows or should know that an objection is necessary. *See Banda v. Garcia*, 955 S.W.2d 270, 272 (Tex. 1997). Here, Gonzalez did not object to Wasserstein's factual statements that controverted Gonzalez's claim that Wasserstein had told him that suit had been filed. Wasserstein's personal knowledge about the factual statements was apparent, and the factual statements were probative of a contested issue. Even though the evidentiary nature of the statements were apparent, Gonzalez did not object when Wasserstein made the factual statements. Failing to object, Gonzalez waived the oath requirement, and the trial court was free to consider Wasserstein's controverting factual statements as evidence. *See Taylor v. Vela*, No. 01-17-00370-CV, 2018 WL 828224, at *3 (Tex. App.—Houston [1st Dist.] Feb. 13, 2018, no pet.) (mem. op.) (holding that, because record established that counsel, who was not under oath, was attempting to show that his office did not receive facsimile transmission, opposing counsel should have known to object to counsel's unsworn statements, and thus counsel's statements constituted some evidence that he did not receive facsimile transmission); *Darnell v. Broberg*, 565 S.W.3d 450, 462 (Tex. App.—El Paso 2018, no pet.) (holding that attorney's unsworn statement, refuting claim in third-party petition alleging that he had made misrepresentations during pre-suit settlement negotiations, qualified as evidence that trial court could consider because third-party plaintiff had failed to object to attorney's unsworn factual statement); *Hendricks v. Barker*, 523 S.W.3d 152, 160 (Tex. App.—Houston [14th

was free to evaluate Gonzalez's and Wasserstein's credibility and to disbelieve Gonzalez's testimony on this issue. *See id.* ("As the fact finder in a bench trial, the trial court's role is to evaluate the credibility of the witnesses . . . .").

Gonzalez also contends in his sixth issue that deemed admissions, resulting from unanswered requests for admission served on Wasserstein, establish that Wasserstein acted intentionally. *See* TEX. R. CIV. P. 198.3. However, "a party relying upon an opponent's pleadings as judicial admissions of fact must protect the record by objecting to the introduction of controverting evidence and to the submission of any issue bearing on the facts admitted." *Marshall v. Vise*, 767 S.W.2d 699, 700 (Tex. 1989). Here, Gonzalez never mentioned the admissions to the trial court. Gonzalez waived the right to rely on the admissions by allowing the introduction of evidence contrary to the admissions without an objection indicating that he was relying on the deemed admissions. *See id.* ("[A] party waives the right to rely on an opponent's deemed admissions unless objection is made to the introduction of evidence contrary to those admissions.").

Gonzalez contends that the trial court erred by allowing the introduction of evidence contrary to the admissions. We disagree. The trial court had no duty to

---

Dist.] 2016, no pet.) (holding trial court was free to consider attorneys' unsworn statements at hearing on motion to disqualify when neither side objected to unsworn factual statements).

disallow contrary evidence without an objection. Rather, it was Gonzalez's duty to protect his right to rely on the deemed admissions by objecting. *See id.*

We conclude that Gonzalez has failed to conclusively establish that Wasserstein intentionally engaged in the complained-of conduct related to the filing of his suit. We hold that the evidence was legally sufficient to support the trial court's determination that Gonzalez was not entitled to treble damages under the DTPA. Because we further conclude that the record does not show that the trial court's determination was against the great weight and preponderance of the evidence, we hold that the evidence was factually sufficient to support the trial court's determination.

We overrule Gonzalez's third and sixth issues.

## Conclusion

We affirm the judgment of the trial court.

Richard Hightower
Justice

Panel consists of Chief Justice Radack and Justices Goodman and Hightower.